**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CONSUELO JORDAN,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 11-1486 (JDB)
                                        )
PAUL QUANDER, *et al.*,                 )
                                        )
                    Defendants.         )
_____ )

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the federal defendant's motion to dismiss. For the

reasons discussed below, the motion will be granted.

### I.  BACKGROUND

Plaintiff, a black female, Am. Compl. ¶ 8, files this "complaint for declaratory and

injunctive relief . . . for a violation of her civil rights . . . under . . . the 1964 Civil Rights Act and

the Civil Rights Act of 1866," and "under the provisions of 42 U.S.C. [§] 1983," *id.* ¶ 1.  She

names four defendants: Paul Quander, former Director of the Court Services and Offender

Supervision Agency ("CSOSA"),[1] Jasper Ormand, former Interim Director of CSOSA,[2] Susan

---

[1]    Defendants' counsel represents that Quander left CSOSA on June 30, 2008. *See* Defs.'
Mem. at 4 n.9.
[2]    The Court presumes that plaintiff intends to name Jasper Ormand, not Jasper Omar, as a
party. *See* Defs.' Mem. at 4 n.10.

Shaffer, former Director of the Pretrial Services Agency ("PSA"),[3] and Phillip McHugh, a Metropolitan Police Department ("MPD") officer.[4]  *Id.* ¶¶ 4-7.

### A.  *Plaintiff's Allegations*

The factual allegations pertaining to plaintiff's race discrimination claim are few. Generally, plaintiff alleges that she began her employment at CSOSA in 2000 as a Pretrial Services Officer subject to a two-year period of probation, *see* Am. Compl. ¶ 13, that she "filed a complaint for Job discrimination and Sexual Harassment" in or about 2000 "due to Employment Discrimination [by] her former Supervisor, Michael Kainu," *id.* ¶ 16, and that, notwithstanding a satisfactory performance evaluation in July 2001, she was "terminated due to her race," *id.* ¶ 19. The complaint, even as amended, otherwise rambles incoherently.  For example, plaintiff accuses defendant McHugh of "illegally hacking exams in New York City using derogatory language, sex talk, and dirty talk and raping," and of "follow[ing] plaintiff daily to get rid of her and jobs, due to job discrimination."  *Id.* ¶ 26.  In addition, she alleges that the United States Attorney General, who is not a named defendant to this action, "held hate fights against plaintiff" and "attack[ed] plaintiff because of black men receiving 15 million yearly, due to basketball in her area."  *Id.* ¶ 27.  Defendants Quander and Ormand are allegedly responsible for unspecified acts of discrimination "against [her] brother's career in professional basketball and degrees in Education that he received in New York, 1984 and his teachings."  *Id.* ¶ 28.  And the PSA allegedly is "stealing from [plaintiff's] banking accounts, TSP Plans, slipping employees in her

---

[3]      The D.C. Pretrial Services Agency, the current director of which is Clifford T. Keenan, is an independent entity within CSOSA responsible for the supervision of pretrial defendants.  *See* http://www.csosa.gov/about/history.aspx.

[4]      Although the Clerk of the Superior Court of the District of Columbia appears to have issued a summons for service on defendant McHugh, there is no docket entry to indicate that service of process has been effected.  McHugh has not appeared *pro se*, and counsel has not entered an appearance on his behalf.  The Court will dismiss McHugh as a party to this action.

slots, and rehiring them due to her sexual harassment claims," *id.* ¶ 29, and has "brought girls into the office to assault and fight plaintiff," *id.* ¶ 39.  Another of plaintiff's allegations is that assorted defendants have copied her "complaint letters," *id.* ¶ 33, have "plac[ed] signs in front of [plaintiff's] home," *id.*, and have "enter[ed her] home to perform sexual harassment and illegal discrimination," *id.* ¶ 34.  Plaintiff demands a declaratory judgment, injunctive relief, and monetary damages.  *See id.* at 10-11 (Prayer for Relief).

### B.  Defendants' Representations

In August 2000, plaintiff "filed an administrative EEO Complaint against a CSOSA official," Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2, presumably her former supervisor, Michael Kainu, *see* Am. Compl. ¶ 16; *see also* Defs.' Mem., Ex. A (Decision, *Jordan v. Quander*, EEOC No. 100-A2-8158X (hereinafter "EEOC Decision")) at 5-7 (discussing plaintiff's unsupported assertions that she was subjected to Kainu's "bullying, victimization and harassment").

According to defendants, plaintiff was terminated on November 2, 2001, during her probationary period, because of her unsatisfactory work performance.  *See* Defs.' Mem. at 2-3. She promptly "initiated EEO counseling on November 14, 2001, and thereafter filed a formal complaint on January 8, 2002, alleging that she had been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e *et seq.*"  *Id.*, Ex. A (EEOC Decision) at 1.  An administrative law judge ("ALJ") with the Equal Employment Opportunity Commission ("EEOC") considered "whether [plaintiff] was discriminated against based on her race (Black) and/or retaliated against based on prior EEO activity when she was terminated during her probationary period in November 2001," and granted the agency's motion

for summary judgment without a hearing.  *Id.*, EEOC Decision at 1.  Commenting that there was

"overwhelming evidence of record indicat[ing] that [plaintiff] did, in fact, experience

performance deficiencies," the ALJ found that plaintiff "ha[d] not placed in genuine dispute the

reason articulated for her firing," that is, the "performance deficiencies" documented as to her

employment as a Pretrial Services Officer.  *Id.*, EEOC Decision at 7.  CSOSA issued its final

agency determination ("FAD") on June 20, 2003.  *Id.*, Ex. B (Final Order, *Jordan v. Quander*,

EEOC Case No. 100-A2-8158X, dated June 20, 2003).

## *C.  Plaintiff's Past and Present Employment Discrimination Litigation*

In September 2003, counsel filed a lawsuit on plaintiff's behalf alleging race

discrimination and due process violations.  *Id.*, Ex. C (Plaintiff's Complaint for Discriminatory

and Injunctive Relief, *Jordan v. Quander*, No. 03-cv-1926 (D.D.C. filed Sept. 16, 2003)).

According to plaintiff, CSOSA terminated her because of her race, even though "similarly

situated white employees were not treated the same as those individuals in [her] protected class."

*Id.* (Complaint) ¶ 16.  She also claimed to have been a permanent employee with a protected

property interest in her government employment, an interest violated by CSOSA when it

afforded her only the rights of a probationary employee.  *See id.* (Complaint) ¶¶ 19-23.  The

Court dismissed the suit "[i]n light of [plaintiff's] stated interest not to proceed."  *Id.*, Ex. D

(Minute Entry Order, *Jordan v. Quander*, No. 03-cv-1926 (D.D.C. filed Mar. 24, 2006)).  More

than a year later, plaintiff, proceeding *pro se*, attempted to reinstate the case; the court denied her

request because she presented no "legitimate reason . . . to abjure her prior voluntary dismissal."

*Id.*, Ex. E (Order, *Jordan v. Quander*, No. 03-cv-1926 (D.D.C. filed May 4, 2007)).  The Court

instructed plaintiff that, if she "wishe[d] to once again prosecute her claims . . ., she [would] have

to file a new lawsuit."  *Id.*, Ex. E.

In 2005, plaintiff filed four separate lawsuits in the Superior Court of the District of Columbia against CSOSA and individual employees of either CSOSA or PSA; each lawsuit was removed to this court and dismissed for plaintiff's failure to take necessary action. *See* Minute Order, *Jordan v. Tiggs*, No. 05-cv-1706 (D.D.C. filed Sept. 19, 2006) (dismissing case for failure to prosecute); Minute Entry Order, *Jordan v. Quander*, No. 05-cv-0281(D.D.C. filed Sept. 14, 2005) (granting Quander's motion to dismiss as conceded); Minute Order, *Jordan v. Quander*, No. 05-cv-1883 (D.D.C. filed Mar. 3, 2006) (granting defendant's motion to dismiss as conceded); Minute Order, *Jordan v. Court Services and Offender Supervision Agency*, No. 05-cv-2144 (D.D.C. filed Mar. 3, 2006) (granting defendants' motion to dismiss as conceded). Undeterred, plaintiff has filed two additional lawsuits, both pending before this court. *See Jordan v. Quander*, Civ. No. 11-2297 (D.D.C. filed Sept. 23, 2011); *Jordan v. U.S. Attorney's Office*, No. 12-cv-0838 (D.D.C. filed May 23, 2012).

## II. DISCUSSION

### A. *Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted*

#### 1. Dismissal Standard Under Rule 12(b)(6)

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the complaint, as amended, fails to state a claim upon which relief can be granted. *See generally* Defs.' Mem. at 9-19. A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *See Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). "[T]he complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s the] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court is "not bound to accept as

true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), but it, too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

### 2.  Plaintiff's Title VII Claims Against Quander, Ormand and Shaffer in their Individual Capacities Will Be Dismissed

Defendants argue that, under 42 U.S.C. § 2000e-16(c), the proper defendant is the current Director of CSOSA. *See* Defs.' Mem. at 9. The Court concurs. Title VII provides for the filing of "a civil action . . . in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). In the circumstances of this case, the only proper defendant on a Title VII claim is the current Director of CSOSA. Defendants' motion to dismiss on this basis will be granted. *See Hunt v. District of Columbia*, No. 02-7044, 2002 WL 1997987, at *1 (D.C. Cir. Aug. 29, 2002) (per curiam) (affirming dismissal of Title VII and ADA claims against defendant in her individual capacity); *Smith v. Janey*, 664 F. Supp. 2d 1, 8 (D.D.C. 2009) ("The defendants are correct that there is no individual liability under Title VII,

the ADEA or the ADA."), *aff'd sub nom. Smith v. Rhee*, No. 09-7100, 2010 WL 1633177 (D.C.

Cir. Apr. 6, 2010) (per curiam); *see also Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 3

(D.D.C. 1998) (dismissing Title VII action *sua sponte* for lack of subject matter jurisdiction

where plaintiff named the agency, not the agency head, as the defendant).

### 3.  Plaintiff's Title VII Claims Are Time-Barred[5]

A person bringing an employment discrimination claim must file her lawsuit "[w]ithin 90

days of receipt of notice of final action taken by [an] agency . . ., or by the [EEOC] upon an

appeal from a decision or order of such . . . agency, . . . on a complaint of discrimination based

on race." 42 U.S.C. § 2000e-16(c); *see Howard v. Gutierrez*, 474 F. Supp. 2d 41, 51 (D.D.C.

2007). Ordinarily, if a plaintiff fails to file her lawsuit within this 90-day period, the suit is time-

barred. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 (1984). "Courts apply

the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one

day." *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006) (citation omitted). But filing

within this limitations period is not a jurisdictional requirement; instead, the 90-day period

---

[5]      Noting that plaintiff "appears to allege that she has been subject to retaliation as a result
of her EEOC and legal complaint subsequent to her 2002 EEO Complaint and 2003 civil action,"
Defs.' Mem. at 11, defendants move to dismiss any new retaliation claim on the ground that
plaintiff did not exhaust her administrative remedies before filing this action, *see id.* at 11-12.
Assuming that plaintiff does intend to raise a new retaliation claim, the Court concurs that the
claim must be dismissed. "It is well-established that a federal employee may assert a Title VII
claim in federal court only after a timely complaint has been presented to the agency involved."
*Nurriddin v. Goldin,* 382 F. Supp. 2d 79, 92 (D.D.C. 2005); *Rhodes v. Napolitano,* 656 F. Supp.
2d 174, 179 (D.D.C. 2009) (citing *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 832-33 (1976)).
Among other requirements, the employee must contact an EEO counselor within 45 days of the
event of which she complains. *See* 29 C.F.R. § 1614.105(a)(1). Nothing in plaintiff's complaint
or elsewhere in the record of this case shows that plaintiff contacted an EEO counselor about any
real or perceived act of retaliation arising after the 2002 EEOC complaint of her termination.
Defendants' motion can also be granted on this basis.

"functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Id.*; *see Smith v. Holder*, 806 F. Supp. 2d 59, 62 (D.D.C. 2011) ("It is well-settled that the statutory time limit for filing a lawsuit under Title VII is subject to waiver, estoppel, and equitable tolling.") (citations omitted); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982). Application of equitable tolling is left to the Court's discretion, *see Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1988), and may be warranted where a plaintiff establishes "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). For example, equitable relief may be extended where the plaintiff has received inadequate notice of the limitations period, where the defendant's misconduct "lulled [her] into inaction," or where "the [C]ourt has led the plaintiff to believe she has done everything required of her." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Plaintiff alone bears the burden of establishing an equitable basis for excusing her failure to file her complaint within the 90-day limitations period. *See Saltz v. Lehman,* 672 F.2d 207, 209 (D.C. Cir. 1982); *House v. Salazar*, 598 F. Supp. 2d 89, 92-93 (D.D.C. 2009).

For purposes of this discussion, the 90-day limitations period began to run on or about June 20, 2003, the date of CSOSA's FAD. Plaintiff's first lawsuit, filed on her behalf by counsel on September 16, 2003, fell within the limitations period. This civil action, however, was not filed until August 10, 2011, nearly eight years after the limitations period expired.[6] Plaintiff makes no mention of tolling of the limitations period, let alone a cogent argument that tolling is warranted in this case. The Court concludes that plaintiff failed to file the instant complaint

---

[6]     Plaintiff first filed her complaint in the Superior Court of the District of Columbia. *See* Compl., *Jordan v. Quander*, No. 0006504-11 (D.C. Super. Ct. filed Aug. 10, 2011). Defendants removed the action on August 17, 2011. *See* Notice of Removal*, Jordan v. Quander*, No. 11-cv-1486 (D.D.C. filed Aug. 17, 2011).

timely and, therefore, the Title VII claims must be dismissed.  *See Gladden v. Bolden*, No. 11-5279, 2012 WL 1449249, at *1 (D.C. Cir. Apr. 12, 2012) (affirming dismissal of complaint "because it was filed more than ninety days after appellant received appellee's final agency decision on appellant's administrative complaint").

### 4.  Plaintiff Fails to State a Fifth Amendment Claim

Plaintiff alleges that her "property rights have been violated," Am. Compl. ¶ 2(b), by defendants who allegedly were "stealing from her bank accounts," *id.* ¶ 29, and who have "stolen credit cards, rings, bracelets, shoes,  . . . pictures, cars, IRS tax deductions and . . . books," *id.* ¶ 1.  Missing from the complaint, however, is any assertion of a constitutionally protected right to any of these items or any allegation to support her claim for due process with respect to the loss of these items.

The complaint may be understood to raise a due process claim under the Fifth Amendment against CSOSA with respect to plaintiff's employment.[7]  Plaintiff suggests an entitlement to her federal employment, for example, by alleging that she completed a year-long probationary period by August 2000, *id.* ¶ 11, yet "was only afforded the rights of a probationary

---

[7]        Plaintiff does not appear to raise a Fifth Amendment claim against Quander, Ormand or Shaffer in his or her individual capacity under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), pursuant to which a victim of a constitutional violation committed by a federal agent may sue that agent in federal court.  *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). Even if she had intended to raise such a constitutional claim, her failure to identify a constitutionally-protected liberty or property interest is fatal.  *See Partington v. Houck*, 840 F. Supp. 2d 236, 24 (D.D.C. 2012) (dismissing *Bivens* claim against Judge Advocate General of the Navy, sued in his individual capacity, arising from plaintiff's suspension from practice of law in naval courts where "Plaintiff has not identified a constitutionally-protected Fifth Amendment liberty or property interest in the limited practice of law before naval courts"); *Lail v. U.S. Gov't*, 771 F. Supp. 2d 49, 61 (D.D.C. 2011) (dismissing *Bivens* claims against federal defendants where "[n]one of the actions alleged in the complaint and attributable to the federal defendants constituted a violation of any of the constitutional amendments identified by the plaintiffs").

employee," *id.* ¶ 1, at the time of her termination.   However, the vague allegations of the complaint do not clearly articulate "a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, expressed or implied), that [plaintiff] would continue in [her] job." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).   Past employment, whether permanent or probationary, does not alone confer entitlement to continued employment.   *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972) (acknowledging assistant professor's "abstract concern in being rehired" after completion of fixed term of one academic year, but not "a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment").   And to the extent that she claims all the rights of a permanent federal employee, her remedy, if any, would be under the Civil Service Reform Act, "codified in Title 5 of the United States Code, [which] "established a comprehensive system for reviewing personnel action taken against federal employees." *Peevy v. Donahue*, __ F. Supp. 2d __, __, 2012 WL 699516, at *5 (D.D.C. Mar. 6, 2012) (citing *United States v. Fausto,* 484 U.S. 439, 455 (1988)).

### B.  *Dismissal for Lack of Subject Matter Jurisdiction*

#### 1.  Dismissal Standard Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and it is presumed that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency,* 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").   And "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'"

*Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974) (quoting *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 (1904)).  "[B]izarre conspiracy theories, any fantastic government manipulations of [a plaintiff's] will or mind, [and] any sort of supernatural intervention" are examples of "essentially fictitious" claims that warrant dismissal for lack of subject matter jurisdiction.  *Best v. Kelly*, 39 F. 3d 328, 330 (D.C. Cir. 1994).  For example, unsupported allegations of an "on-going conspiracy to deprive [a plaintiff] of his right to access the courts" by hacking his personal computer, monitoring his phone calls, and tracking him via helicopter are frivolous claims, *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54 (D.D.C. 2008), as are allegations of "various violations of [a plaintiff's] constitutional rights" and "surveillance by various government agencies and officials who are stalking her and conspiring against her," *Newby v. Obama*, 681 F. Supp. 2d 53, 54 (D.D.C. 2010).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

2.  Sovereign Immunity Bars Plaintiff's Claims for Damages Against CSOSA and Quander, Ormand and Shaffer In Their Official Capacities

Insofar as plaintiff demands damages from defendants Quander, Ormand and Shaffer in their official capacities, the doctrine of sovereign immunity bars the claim.  A suit against federal officials in their official capacities is treated as if plaintiff brought her claims against the United States directly.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Such consent may not be implied, but must be "unequivocally expressed."  *United*

*States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992).  Sovereign immunity extends to government agencies and to their employees where such employees are sued in their official capacities.  *See Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 483-86 (1994); *Clark v. Library of Congress,* 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their *official* capacity absent a specific waiver by the government.").

Plaintiff does not identify any provision by which the United States has waived its immunity with respect to her claims.  "Sovereign immunity is jurisdictional in nature," *Meyer,* 510 U.S. at 475, and absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction to entertain plaintiff's claims for money damages against CSOSA or any of its employees sued in their official capacities.  *See Bourdon v. Mabus*, 813 F. Supp. 2d 200, 209 (D.D.C. 2011); *Partovi v. Matuszewski*, 647 F. Supp. 2d 13, 18 (D.D.C. 2009).

Furthermore, "Section 1983 does not apply to federal officials acting under color of federal law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 1998).  CSOSA is a federal entity, *see* D.C. Code § 24-133(a) (establishing CSOSA "within the executive branch of the Federal Government"), and defendants Quander, Ormand and Shaffer were all federal officials acting under federal law.  "Because the suit against these defendants in their official capacities is treated as if it were brought against CSOSA directly, and because CSOSA is a federal government agency, § 1983 does not apply and cannot be a basis for this Court's jurisdiction." *Johnson v. Williams*, 699 F. Supp. 2d 159, 168 (D.D.C. 2010), *aff'd sub nom. Johnson v. Fenty*, No. 10-5015, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (per curiam); *Cooper v. Johnson*, 652 F. Supp. 2d 33, 38 (D.D.C. 2009) (dismissing § 1983 claims brought against CSOSA, CSOSA's Interim Director and a Community Supervision Officer sued in their official capacities).

12

### 3.  Plaintiff's Remaining Claims Will Be Dismissed As Frivolous

The trial court may dismiss not only claims based on an indisputably meritless legal theory, but also claims whose factual contentions are clearly baseless.  *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (discussing court's authority to dismiss frivolous claims under 28 U.S.C. § 1915).  Claims describing fantastic or delusional scenarios fall into the frivolous category.  *See id.*  The trial court has the discretion to decide whether a complaint is frivolous, and such finding is appropriate when the facts alleged are irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Furthermore, "[a] complaint may be dismissed on jurisdictional grounds when it is patently insubstantial, presenting no federal question suitable for decision."  *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best,* 39 F.3d at 330) (internal quotation marks and citations omitted).  On careful review of the complaint, and its vague and unsupported allegations of harassment, threats, assaults and government surveillance, the Court concludes that the balance of plaintiff's claims must be dismissed as frivolous.  *See, e.g., Bickford v. Gov't of the U.S.*, 808 F. Supp. 2d 175, 182 (D.D.C. 2011) (concluding that plaintiff's "laundry list of wrongful acts and conclusory allegations to support her theory of a conspiracy," were "insufficient to allow the case to go forward" (citations omitted)); *Curran v. Holder,* 626 F. Supp. 2d 30, 34 (D.D.C. 2009) ("dismiss[ing] for lack of subject matter jurisdiction all of plaintiff's claims which are premised on a theory that defendants are conducting surveillance of her as part of a 'national security investigation' and harassing her and her family"); *Richards v. Duke Univ.,* 480 F. Supp. 2d 222, 233 (D.D.C. 2007)).

### III.  CONCLUSION

The plaintiff's complaint, as amended, not only fails to state race discrimination and retaliation claims upon which relief can be granted, but also fails to establish this Court's subject

matter jurisdiction over the remaining claims.  Accordingly, the Court will grant defendants'

motion to dismiss.  An Order is issued separately.


/s/
JOHN D. BATES
United States District Judge

DATE:  August 9, 2012